UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INGRID WHEELER , individually and as Mother and Guardian of JOHN BOSK III, a disabled adult,<br>     Plaintiffs,<br><br>v.<br><br>STEPHEN QUARTINO, TIMOTHY CROSTON, and UNITED STATES OF AMERICA,<br>     Defendants. | CIVIL ACTION<br>NO. 12-40121-TSH |

## AMENDED MEMORANDUM AND ORDER OF DECISION[1]
### MAY 12, 2014

**HILLMAN, D.J.**

### Nature of the Case

Plaintiffs, Ingrid Wheeler, individually and as mother and guardian of John Bosk III, a disabled adult, filed suit against individual Defendants, Stephen Quartino ("Agent Quartino") and Timothy Croston ("Agent Croston"), Special Agents with the United States Treasury Inspector General for Tax Administration ("TIGTA"), and the United States of America as the result of Agent Quartino having shot and killed their dog while on their property attempting to speak to another resident. Plaintiffs allege claims under 42 U.S.C. §1983 for violation of the Fourth and Fourteenth Amendments (Count I); under the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, §§11H and11I (Count II); for Assault (Count III); for Negligent and Intentional Infliction of Emotional Distress (Count IV); for Trespass (Count V); and under the

---

[1] This Amended Memorandum and Order replaces the Memorandum and Order issued this same date by deleting the sentence "As the dog charged Agent Croston, Agent Quartino shot him," which was contained in the first full paragraph on page 3 of the opinion.

Federal Tort Claims Act ("FTCA")(Count VI).  Counts I-V are asserted against Agents Quartino and Croston in their individual capacities.  Count VI is asserted against the United States. [2]

This Memorandum of Decision and Order addresses Defendants' Motion For Summary Judgment (Docket No. 38).  Plaintiffs concede that Defendants are entitled to summary judgment on their FTCA claims for intentional infliction of emotional distress, trespass and assault.  For the reasons set forth below, summary judgment shall enter for the Defendants on Plaintiffs' remaining claims for unlawful seizure under the Fourth Amendment of the Constitution (Count I) and negligent infliction of emotional distress under the FTCA (Count VI).

### Discussion[3]

*Plaintiffs' Fourth Amendment Claim*

Plaintiffs assert a claim for unlawful seizure violation of the Fourth Amendment pursuant to *Bivens v. Six Unknown Fed. Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999 (1971) ("*Bivens'* claim") as the result of the agents having shot and killed their dog, Mongo.[4]  The First Circuit has recognized that the killing of a dog may constitute a seizure for Fourth Amendment purposes.  *See Maldonado v. Fontanes,* 568 F.3d 263, 270–71 (1st Cir. 2009).  However, as with other Fourth Amendment interests, such a seizure constitutes a violation only if it is unreasonable.

---

[2] The Court has previously dismissed Count I to the extent that it alleges a claim for violation of Section 1983 and Counts II-V. *See Order* dated May 23, 2013 (Docket No. 22).  Plaintiffs had conceded that these claims should be dismissed for failure to state a claim.

[3] For the most part, the factual assertions made in Defendants' Statement of Undisputed Material Facts In Support Of Defendants' Motion For Summary Judgment (Docket No. 40)("Defendants' Statement of Facts") are not contested by the Plaintiffs.  I find that the disputed factual assertions, which relate primarily to the TIGTA investigation and alleged threats against a TIGTA agent, are not relevant to my determination of this case.  Therefore, for purposes of this Order and Memorandum of Decision, I adopt those factual assertions contained in Defendants' Statement Of Facts that have been admitted by the Plaintiffs.

[4] In their reply brief and at the hearing, Plaintiffs attempt to assert that a seizure of their personal property occurred prior to the dog being shot. More specifically, they argue that given that the individual Defendants were aware that John Bosk did not wish to speak to them, their armed appearance at the home constituted a seizure because the occupants would not feel that they were free to leave. Such a claim was not alleged in the Complaint and Plaintiffs' have not developed any coherent factual or legal argument to support such a claim.

2

Whether the use of force was reasonable is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. 'The calculus of reasonableness must embody allowance for the fact that law enforcement agents are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.'" *Dziekan v. Gaynor*, 376 F.Supp.2d 267, 271 (D.Conn. 2005)(quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989)). "The government retains a strong interest in allowing law enforcement officers to protect themselves and the citizenry from animal attacks. Thus, courts have generally held that no unreasonable seizure may be found where an officer has killed a dog that posed an imminent threat ... In contrast, courts have found that the killing of a pet dog by law enforcement officers constituted an unreasonable seizure where the dog posed no imminent danger." *Id.*, at 271 (internal citations omitted).

In this case, Agent Quartino was confronted by a dog that not only lunged at him as the door was opened, but bit him on the hand. In fact, he was bitten three times by the dog—once in the hand and twice on the left thigh. The third time the dog bit Agent Quartino, he (the dog) held on. After Agent Quartino got away from the dog, the dog started running toward Agent Croston. The dog continued to charge Agent Croston— as it did so, it was snarling and its ears were back. Agent Croston yelled he was going to shoot the dog when it turned and started charging Agent Quartino. At this time, the dog was barking and growling with its teeth bared and hair standing on end. Agent Quartino shot the dog in the chest as it continued to charge him. The dog continued to approach, so Agent Quartino shot him again. At this point, the dog went down. The dog was a large coonhound breed who weighed approximately 100 pounds and the entire incident lasted only 5-8 seconds.

The ultimate question is whether it was reasonable for the agents, and in particular, Agent Quartino, to believe that they were in imminent danger. Plaintiffs suggest that the agent should

have first used his extended baton before shooting the dog and his failure to do so, creates a genuine issue of material fact as to whether his actions were objectively reasonable. I disagree. Agent Quartino was faced with a charging dog who weighed approximately one hundred pounds, had bitten him three times, charged his partner despite being shot and then turned and charged him again. Bearing in mind that the incident took at most eight seconds and the dog's violent and aggressive manner, I find that Agent Quartino's actions were objectively reasonable. Therefore, summary judgment shall enter for the Defendants on Plaintiffs' *Bivens'* claim.

*Plaintiffs' Claim for Negligent Infliction Of Emotional Distress*

Presuming that Massachusetts law would recognize a claim for emotional distress for the killing of a pet, *see Krasnecky v. Meffen*, 56 Mass. App. Ct. 418, 422, 777 N.E.2d 1286, 1289 (2002)(noting that it is an open issue in Massachusetts whether a party can recover for emotional distress due to death of companion animal), on the record before me, I find that the Defendants acted reasonably in all respects in their actions toward the Plaintiffs and the killing of the dog. For that reason, Plaintiffs' claim for negligent infliction of emotional distress also fails.

**Conclusion**

Defendants' Motion For Summary Judgment (Docket No. 38) is ***granted***. Accordingly, Judgment shall enter for the Defendants.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE